# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **ALEXANDER BERNARD JACOBSON**<br> **La. DOC #535678** | **CIVIL ACTION NO. 08-1123** |
| **VS.** | **SECTION P** |
| **LOUISIANA DEPARTMENT OF**<br>**CORRECTIONS, ET AL.** | **JUDGE JAMES**<br>**MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Alexander Bernard Jacobson filed the instant civil rights complaint (42 U.S.C. §1983) *in forma pauperis* on July 29, 2008. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is now incarcerated at the Avoyelles Corrections Center, Cottonport, Louisiana, but he complains that he was denied appropriate medical care while he was incarcerated at the Richwood Corrections Center (RCC) in Monroe and the Catahoula Correctional Center (CCC) in Harrisonburg, Louisiana. He sues the Wardens of both institutions, "all personnel who dispense prescription medication" and their supervisors at both institutions, and the LDOC and its Secretary. He prays for compensatory and punitive damages for pain and suffering and future medical expenses; he also asks the court to order "... proof of licensing and certification of all personnel who dispense medications to inmates..." and certification of the complaint as a class action. In a pleading filed while his original complaint was being screened, plaintiff requested permission to supplement his original complaint to join additional defendants at the East Feliciana Parish Corrections Center, Clinton, Louisiana, the St. John the Baptist Parish Detention Center, LaPlace, and the Elayn Hunt Corrections Center, St. Gabriel, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance wit the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons, it is recommended plaintiff's Motions for Class Action Certification and Appointment of Counsel be **DENIED** and, that plaintiff's claims against personnel at the CCC and RCC and the LDOC be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted; and, that plaintiff's claims arising at institutions (East Feliciana Parish Detention Center, the St. John the Baptist Parish Detention Center, and the Elayn Hunt Corrections Center) not located within the geographical jurisdiction of this Court be **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to re-file those complaints in the proper court.

## *Background*

### *1. Original Complaint [rec. doc. 1]*

In his original complaint, filed on July 29, 2008, plaintiff made the following claims:

(1) He suffers from hypertension[1] and has been prescribed medication to control his blood

---

[1] Hypertension is the term doctors use for high blood pressure. The goal of treatment is to reduce blood pressure so that you have a lower risk of complications. There are many different medicines that can be used to treat high blood pressure. Such medicines include:
  * Alpha blockers
  * Angiotensin-converting enzyme (ACE) inhibitors
  * Angiotensin receptor blockers (ARBs)
  * Beta-blockers
  * Calcium channel blockers
  * Central alpha agonists
  * Diuretics
  * Renin inhibitors, including aliskiren (Tekturna)
  * Vasodilators

Medicines used if the blood pressure is very high may include:

  * Clonidine
  * Diazoxide
  * Furosemide

pressure.

(2) "[O]n at least 20 but no more than 40" times during his incarceration at RCC prison personnel failed to provide him with his prescribed hypertension medication causing his blood pressure to "escalate" as high as 190/142.

(3) On at least three occasions, the wrong medication was administered by un-licensed personnel causing plaintiff to experience nausea, vomiting, diarrhea, and a "general loss of coherence."

(4) RCC permits unlicensed, uncertified, inexperienced corrections officers to dispense medications.

(5) As a result of the problems alleged above, he continues to suffer from physical distress, fatigue, limited use of his left arm, loss of memory, and shortness of breath.

(6) He submitted numerous grievances to prison authorities and to the LDOC but he has not received a response to any of his grievances.

## 2. First Notice of Changed of Address [rec. doc. 4]

In a letter received on August 14, 2008, plaintiff advised that he had been transferred to the East Feliciana Parish Detention Center, Clinton, Louisiana. Therein he also posed various questions concerning his on-going litigation, but concluded by acknowledging that he knew "... the court cannot advise..."

---

\* Hydralazine
\* Minoxidil
\* Nitroprusside

See Medline Plus – Encyclopedia, a Service of the National Institutes of Health and the United States Library of Medicine at http://www.nlm.nih.gov/medlineplus/ency/article/000468.htm

### *3. Second Notice of Change of Address [rec. doc. 5]*

In a letter received on August 27, 2008, plaintiff advised of his transfer to the St. John Parish Detention Center, Laplace, Louisiana. He also complained that unlicensed and uncertified corrections officers at the East Felciana Parish Detention Center were allowed to dispense medication during his stay there; and, he complained that he was not provided medication for a period of time after his arrival at that institution. He also complained that the institution refused to send his medication to St. John Parish upon his transfer. He asked the court to consider his letter as an amended petition adding the Sheriff, Warden, nursing staff and correctional staff at East Feliciana Detention Center as defendants; and, he prayed for injunctive relief – an order directing the defendants to transfer him immediately to an LDOC facility.

### *4. Third Notice of Change of Address [rec. doc. 6]*

In a letter received and filed on September 15, 2008, plaintiff advised that he was transferred to Elayn Hunt Correctional Center in St. Gabriel, Louisiana as a result of Hurricane Gustav; he also indicated that his legal papers were lost.

### *5. Memorandum Order [rec. doc. 7]*

On October 3, 2008, the undersigned completed an initial review of the original complaint and ordered plaintiff to amend to provide more specific information.

### *6. First Response to Memorandum Order [rec. doc. 8]*

In a letter from plaintiff which was received and filed on October 16, 2008, plaintiff complained that the East Feliciana defendants had not been mentioned in the amend order of October 3, 2008. Plaintiff also intimated that he desired counsel to be appointed to represent him. He also asked the court to assist him in obtaining duplicate copies of documents which were

destroyed during Hurricane Gustav.

**7. Amended Complaint [rec. doc. 9]**

    **a. Catahoula Corrections Center (CCC)**

In his amended complaint, plaintiff alleged that:

1. He was incarcerated at CCC from February 11 – April 25, 2008;

2. He had previously been prescribed .2 mg clonidine (twice daily); 100 mg captopril (three times daily), 10 mg Norvasc (once daily), a potassium supplement, and 25 mg of HCTZ, a diuretic[2] and a supply of these medications accompanied plaintiff to CCC from East Baton Rouge Parish;

3. On February 20, 2008, when the prescriptions were refilled, plaintiff received "almodipine [sic] for Norvasc..." and he was given Flomax and lisonapril [3] "by mistake for 3

---

[2] **Clonidine** is used alone or in combination with other medications to treat high blood pressure. Clonidine is in a class of medications called centrally acting alpha-agonist hypotensive agents. It works by decreasing your heart rate and relaxing the blood vessels so that blood can flow more easily through the body.
**Captopril** is used to treat high blood pressure and heart failure. It decreases certain chemicals that tighten the blood vessels, so blood flows more smoothly and the heart can pump blood more efficiently.

**Norvasc, or amlodipine** is used alone or in combination with other medications to treat high blood pressure and chest pain (angina). **Amlodipine** is in a class of medications called calcium channel blockers. It lowers blood pressure by relaxing the blood vessels so the heart does not have to pump as hard. It controls chest pain by increasing the supply of blood to the heart. If taken regularly, amlodipine controls chest pain, but it does not stop chest pain once it starts.

**Potassium** is essential for the proper functioning of the heart, kidneys, muscles, nerves, and digestive system. Usually the food you eat supplies all of the potassium you need. However, certain diseases (e.g., kidney disease and gastrointestinal disease with vomiting and diarrhea) and drugs, especially diuretics ("water pills"), remove potassium from the body. Potassium supplements are taken to replace potassium losses and prevent potassium deficiency.

**HCTZ or hydrochlorothiazide** is a diuretic or "water pill" used to treat high blood pressure and fluid retention caused by various conditions, including heart disease. It causes the kidneys to get rid of unneeded water and salt from the body into the urine. See <u>Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health</u>, Drugs & Supplements at http://www.nlm.nih.gov/medlineplus/druginformation.html

[3] **Flomax**, or **tamsulosin** is used in men to treat the symptoms of an enlarged prostate (benign prostatic hyperplasia or BPH) which include difficulty urinating (hesitation, dribbling, weak stream, and incomplete bladder

consecutive doses;"

4. Plaintiff complained of dizziness, nausea, vomiting, and headache and asked the correctional officer who was dispensing the medication to check the medications card;

5. According to plaintiff, the Flomax and lisonapril had been prescribed for another inmate and erroneously given to the plaintiff;

6. Plaintiff complained to LPN Misty Cowart, CCC's Medical Supervisor and she responded, "Oh, well, you'll have this ...";

7. He then inquired whether the corrections officers were licensed or certified to dispense medication and he was told to mind his own business;

8. Plaintiff's formal grievances to Wardens Booke and Ramsey concerning the use of unlicensed personnel to dispense medications were also ignored and plaintiff was threatened with retaliation should he continue to complain; (informally, Wardens Booke and Ramsey indicated to plaintiff that the use of corrections officers, instead of nurses, to dispense medication was more cost effective);

9. There were "numerous" incidences of other inmates receiving the wrong medication or of prescriptions being delayed because of the methods and systems used to distribute medication to prisoners at CCC;

---

emptying), painful urination, and urinary frequency and urgency. Tamsulosin is in a class of medications called alpha blockers. It works by relaxing the muscles in the prostate and bladder so that urine can flow easily. Tamsulosin may cause dizziness, lightheadedness, a spinning sensation, and fainting, especially when one gets up too quickly from a lying position. This is more common when the patient first starts taking tamsulosin.

**Lisinopril** is used alone or in combination with other medications to treat high blood pressure. It is used in combination with other medications to treat heart failure. Lisinopril is also used to improve survival after a heart attack. Lisinopril is in a class of medications called angiotensin-converting enzyme (ACE) inhibitors. It works by decreasing certain chemicals that tighten the blood vessels, so blood flows more smoothly and the heart can pump blood more efficiently. *Id.*

10. According to plaintiff, the method of accountability for dispensing medication at CCC involved a 30-day "Master Sheet" which recorded the inmate's name, and the date, time of day, and name of the medication dispensed.

11. Plaintiff was housed at CCC a second time – between May 30 – July 3, 2008 and he experienced the same situation – i.e. unlicensed personnel distributing medication to the inmates;

12. On June 30 and July 1, plaintiff was taken to a clinic at Sicily Island, Louisiana because he missed 5 consecutive doses of clonidine on May 28 and 29, 2008;

13. He was examined and treated by a physician because his blood pressure was elevated;

14. The physician discontinued amlodipine/Novasc and captopril because plaintiff was experiencing swelling in his lower extremities; (Plaintiff claimed that these adverse side effects resulted from adjustments made to the type and dosage of medication by Nurse Cowart without consulting a physician;)

15. In addition to the side-effects described above, plaintiff suffered blurred vision, kidney and bladder problems, numbness and head aches;

16. Plaintiff submitted grievances to Warden Holliday and the LDOC but he believes that many of his grievances were intercepted by the CCC administration; (Plaintiff claims that to the extent that these defendants did receive his grievances, their failure to correct the problems he complained of provides proof of their deliberate indifference;)

17. He further claims that Nurse Cowart violated his rights by instructing non-licensed corrections officers to dispense medication and by failing to provide plaintiff with clonidine as described above; Wardens Ramsey and Booke and major Lacroix acted with deliberate indifference by allowing non-licensed personnel to distribute medication.

**Summary** – Plaintiff summarized his claims as follows: "I charge at Catahoula C.C. the Wardens Booke and Ramsey, Nurse L.P. N. Cowart, Officer Betancourt and all the other correctional officers who pass out medications with subjective intent to harm and deliberate indifference to my serious medical condition by denying me treatment, implementing policies that are illegal, thereby subjective intent to harm me and any other inmates taking prescription medication." [rec. doc. 9, pp. 11-12]

***b. Richwood Corrections Center (RCC)***

Regarding his confinement at RCC, plaintiff has alleged:

1. He was confined at RCC from April 25 - May 30, 2008;

2. His prescribed medications remained the same as had previously been provided during his incarceration at CCC – clonidine, captopril, atenelol[4], HCTZ and lisinopril; plaintiff refused to take the lisinopril because it previously caused an adverse reaction;

3. Plaintiff met with a nurse upon his arrival at RCC who took his history and promised him that his blood pressure medication would be made available to him each day; this nurse was fired some ten days later;

4. The medications at RCC were also distributed by corrections officers and prisoners were required to initial a chart whenever each type of medicine was dispensed;

5. The nurse was on duty from 9 a.m. to 5 p.m. Monday - Friday;

6. On May 2, plaintiff was unable to take his required doses of clonidine and atenolol because RCC ran out of the medication – plaintiff therefore missed 6-8 doses of this medication

---

[4] Atenolol is used alone or in combination with other medications to treat high blood pressure. It also is used to prevent angina (chest pain) and treat heart attacks. Atenolol is in a class of medications called beta blockers. It works by slowing the heart rate and relaxing the blood vessels so the heart does not have to pump as hard. Id.

and his grievances and emergency medical requests were ignored;

7. On May 6 or 7 plaintiff complained to Asstitant Warden Allen and advised that discontinuing the medication is not appropriate; plaintiff also complained of dizziness, headache, loss of appetite, nausea, vomiting, blurred vision, numbness, and disorientation which he contends was caused by the abrupt discontinuation of his medication over the weekend;

8. Plaintiff claimed that he was thereafter deprived his medication each weekend he remained at RCC because the nurse was not on duty for the weekends;

9. Plaintiff continued to file grievances and on May 18 he was interviewed by Wardens Savage and Allen but they insulted him and did not correct the problem;

10. Plaintiff was deprived of his medication the following weekend and experienced the same withdrawal symptoms described above;

11. According to plaintiff, his grievances to the LDOC were intercepted by CCC personnel and therefore his complaints did not reach the Secretary;

12. Plaintiff claimed that the nurse who failed to refill his blood pressure medication should have known that plaintiff's medical condition was serious.

13. On numerous occasions, corrections officers took it upon themselves to give medication that had been prescribed for other inmates;

14. Plaintiff claimed that his constant complaining to prison administrators and corrections officers concerning the distribution of medication was sufficient to establish deliberate indifference to his medical needs, if not on the part of the corrections officers, then surely on the part of the administrative personnel who have been named as the defendants in his law suit.

**Summary** – Plaintiff summarized his complaint as follows: "At RCC I name Wardens Savage and Allen as defendants. Also the unnamed nurse (medical supervisor) all the corrections officers dispensing prescription medications without a license or certification."

### c. Other Institutions

Plaintiff was incarcerated at the Tensas Parish Detention Center from July 3 – August 6, 2008 and had no complaints. Thereafter, from August 6-14, he was incarcerated at the East Felciana Parish Prison; and then, from August 14-29, he was incarcerated at the St. John Parish Prison; and, from August 29- November 5, 2008 he was incarcerated at the Elayn Hunt Correctional Center. Finally, from November 5, 2008 to the present, plaintiff has been incarcerated at the Avoyelles Corrections Center. Plaintiff has made no complaints concerning either Tensas Parish Detention Center or Avoyelles Corrections Center; however, he has advanced additional complaints concerning his treatment at East Feliciana, St. John, and Elayn Hunt.

### 8. Motion to Certify Class Action [rec. doc. 10]

On October 27, 2008 plaintiff filed a Motion to Certify his litigation as a class action with respect to his claims against the LDOC defendants, based upon their policy of allowing unlicensed or uncertified personnel to dispense medication to inmates.

### 9. Change of Address [rec. doc. 11]

In a letter dated November 5, 2008, plaintiff advised that he had been transferred to the Avoyelles Corrections Center in Cottonport, Louisiana. He also advised that he would be released on parole in January 2009.

***Law and Analysis***

***1. Class Action***

Plaintiff asked the court to certify this action as a class action both in his original complaint [rec. doc. 1]; his amended complaint [rec. doc. 9],  and in a separate motion filed on October 27, 2008. [rec. doc. 10]

In order for a lawsuit to be certified as a class action under Rule of Federal Procedure 23(b)(3), the mover must prove that the four prerequisites found in Rule 23(a) and the two additional requirements in Rule 23(b)(3) are met. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir.1999). Under Fed.R.Civ.P. 23(a), an action may be maintained as a class action if it meets the criteria of numerosity, commonality, typicality and adequacy of representation. *Mc.Grew v. Texas Bd. Of Pardons and Paroles*, 47 F.3d 158, 161 (5th Cir.1995). The requirements for Rule 23(b) "are 'predominance' and 'superiority': 'Common questions must predominate over any questions affecting only individual members', and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " *Mullen*, 186 F.3d at 624, citing *Anchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997), quoting Fed.R.Civ.P. 23(b)(3). The district court has wide discretion in deciding whether or not to certify a proposed class. *McGrew*, 47 F.3d at 161. Also, *Mullen*, 186 F.3d at 624.

Here, it is clear that plaintiff should not be permitted to litigate his claims as a class action.  Plaintiff is a prisoner acting *pro se*.  Although he is scheduled to be released in the not

too distant future, he has not demonstrated that he would be an adequate representative[5] of his fellow inmates in a class action. *Caputo v. Fauver*, 800 F.Supp. 168, 169-170 (D.N.J.1992); *Fymbo v. State Farm Fire & Casualty Co.*, 213 F.3d 1320, 1321 (10th Cir.2000); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975); *Ethnic Awareness Org. v. Gagnon*, 568 F.Supp. 1186, 1187 (E.D.Wis.1983); Wright, Miller & Kane, Federal Practice and Procedure 2d: Civil § 1769.9, n. 12. See, *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 162 (5th Cir.1995).Plaintiff's motion for class certification must be denied.

## *2. Request for Appointment of Counsel [rec. doc. 8]*

Plaintiff seeks court-appointed counsel to assist him in the prosecution of a civil rights complaint which centers on his claim that he was denied appropriate medical care while incarcerated at the CCC and the RCC. Initially, the undersigned notes that plaintiff is proceeding in *forma pauperis*. A review of the application to proceed *in forma pauperis* establishes that he should be considered indigent for the purposes of this evaluation.

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United

---

[5] Plaintiff has demonstrated a genuine grasp of the issues involved and, he has thus far presented his claims in an appropriate manner. Nevertheless, it is clear from his many inquiries to the Clerk of Court that he lacks the education and legal background to represent an entire class of prisoners. [see rec. docs. 4, 5, 6, 8 and 11]

States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself. Indeed, plaintiff has indicated that he will shortly be released from custody and will attempt at that time to procure counsel. However, he has not indicated whether he has attempted to retain counsel while in prison.

In any event, plaintiff has managed to file his original complaint, an amended complaint,

and various other pleadings setting forth his cause of action against the named defendants. No special legal knowledge is required of plaintiff herein. Additionally, plaintiff has first hand knowledge of the facts which form the basis of this action. The claim is not necessarily atypical of those often asserted in civil rights litigation and is not complex.

Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his behalf. Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

## 3. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff has set forth specific facts which he claims entitles him to relief.

**4. Medical Care Claims – CCC and RCC and LDOC**

Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail

on such claims, convicts must establish that the actions of the defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that <u>they subjectively intended that harm occur</u>. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response</u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Further, the mere fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997). Plaintiff's complaint when analyzed in accordance with these principals of law, simply fail to state a claim for which relief may be granted.

Plaintiff was incarcerated at CCC on two occasions – from February 11 – April 25, 2008, and then again from May 30 – July 3, 2008 – for a period totaling 110 days. Likewise, he was incarcerated at RCC from April 25 – May 30, 2008 – a period of 36 days.

He generally complained that his medication was "dispensed" by untrained and

unlicensed corrections officers at both institutions. However, with respect to the 146 day time period that he was incarcerated at either CCC or RCC, he made only the following specific complaints in his detailed amended complaint: (1) that he was given 3 doses of Flomax and lisonapril by mistake on February 20 while incarcerated at CCC; (2) that he missed 5 consecutive doses of clonidine between May 28-29, 2008 while incarcerated at RCC; (3) that on unspecified dates Nurse Cowart at CCC adjusted the type and dosage of medication without the approval of a physician; (4) that he missed 6-8 doses of clonidine and atenolol on May 2 when RCC's supply of those medications "ran-out;" and, (5) that he was not provided any medication on the weekends during his stay at RCC. In his original complaint he made only the following specific complaints, (1) "[O]n at least 20 but no more than 40" times during his incarceration at RCC prison personnel failed to provide him with his prescribed hypertension medication causing his blood pressure to "escalate" as high as 190/142; and, (2) on at least three occasions, the wrong medication was administered by unlicensed personnel causing plaintiff to experience nausea, vomiting, diarrhea, and a "general loss of coherence."

Plaintiff claims that the defendants were deliberately indifferent because these mistakes resulted from the institutions' policy of permitting unlicensed corrections officers to dispense medication. However, that claim, standing along, fails to state a claim cognizable under §1983 because that statute provides for causes of action for deprivations of rights secured by the Constitution and laws of the United States. Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 504 n. 2 (5th Cir.1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). "Rather than creating substantive

rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir.1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir.1989)). Plaintiff implies that the CCC and RCC defendants violated his constitutional rights by permitting "unlicensed" personnel to distribute blood pressure medication which had previously been prescribed by a physician. The underlying premise of plaintiff's claim is faulty; he has no constitutional right to have his medication dispensed or distributed by medical personnel. Compare *Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1116 (ND Tex. 2001).

To the extent that plaintiff relies upon the various incidences cited above to establish deliberate indifference on the part of the defendants, he has failed to state a claim. "[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner or detainee], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Plaintiff's complaints make no such showing.  By his own admission, when medication was not administered, plaintiff was examined by a physician soon thereafter. Further, as plaintiff himself noted, corrections officers were required to note the date, time, and dosage of medicine supplied to plaintiff.  These factors simply do not support the inference that the defendants evidenced a "wanton disregard" for plaintiff's condition. At best, plaintiff has shown merely negligence on the part of prison authorities and that is insufficient to establish his claim.

18

***5. Claims Against Defendants – East Feliciana Parish, St. John the Baptist Parish, and Elayn Hunt Corrections Center [rec. docs. 5, 8, and 9]***

After his original complaint was filed, and while it was being screened pursuant to 28 U.S.C. §1915, plaintiff was transferred to prisons located outside of this judicial district.

He has requested permission to supplement his original complaint to include claims against defendants at the East Feliciana Parish Detention Center, the St. John the Baptist Parish Detention Center, and the Elayn Hunt Corrections Center. The East Feliciana Parish Detention Center is located in Clinton, East Feliciana Parish; the St. John Detention Center is located in LaPlace, St. John the Baptist Parish; and Elayn Hunt Corrections Center is located in St. Gabriel, Iberville Parish. East Feliciana Parish and Iberville Parish are located within the jurisdiction of the United States District Court for the Middle District of Louisiana; St. John the Baptist Parish is located within the jurisdiction of the United States District Court for the Eastern District of Louisiana.

The general venue statute provides, with respect to federal question claims that civil actions, such as the instant action, may "... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found ..."

Venue would technically be appropriate in this district; however since those claims arose outside of this judicial district, and, since those defendants likewise reside outside of this judicial district, and, since those claims arose after the original complaint was filed, and, since dismissal of the claims which arose in this district has been recommended, it would be inappropriate for

this court to exercise jurisdiction over those remaining claims. Further, plaintiff claims that he will soon be released from custody and will reside in Orleans Parish. It would probably be easier for plaintiff to litigate his remaining claims in a district closer to his domicile. It is recommended that these claims be dismissed without prejudice to allow the plaintiff to re-file those claims in the appropriate court.

## 6. Conclusion, Order, and Recommendation

Plaintiff's medical care claims against the specified defendants at CCC and RCC should not survive initial review. With regard to those claims which arose outside of this jurisdiction, dismissal is recommended, however, the dismissal should be without prejudice to plaintiff's right to re-file his claims in the appropriate court.

Therefore,

Plaintiff's Motion to Appoint Counsel [rec. doc. 8] is **DENIED;** and,

**IT IS RECOMMENDED THAT** plaintiff's Motion to Certify Class Action [appearing in rec. docs. 1, 9, and 10] be **DENIED;** and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's claims against the defendants at CCC, RCC, and the LDOC be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted;

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Motion to File a Supplemental Complaint naming additional defendants and causes of action which have accrued subsequent to the filing of the original complaint, be **DENIED** and, that his claims against the defendants in East Feliciana Parish, Iberville Parish, and St. John the Baptist Parish be **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to re-file his complaints in the United States

District Courts for the Eastern and Middle Districts of Louisiana.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, December 16, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE